DORÉ, Judge.
These two cases were by agreement consolidated for the purpose of trial for the reason that they are based on the same automobile accident which occurred on November 27, 1949 at about 4:30 p. m. on La. Highway No. 7, a distance of approximately five miles south of the City of Bogalusa. It is shown that Morris Strug accompanied by his wife, Mrs. Ida V. Strug, just prior to the accident was driving his Buick automobile going south on said highway and that D. M. Charles also driving a Buick automobile was going north on the highway just prior to the accident. As Strug arrived near a private driveway of the Garner residence located on the east side of the highway, where he intended to turn left, he pulled to his right and indicated a stop signal and did stop in order to permit a car driven by a Mr. Gates proceeding to his rear to pass him and after the Gates automobile had passed he then proceeded to make his left turn and to enter the private driveway at the Garner residence and while making this left turn the Buick automobile being driven by D. M. Charles collided with the Strug Buick striking it on the right rear, back of the rear wheel. As a result of the collision Mrs. Strug was allegedly thrown out of the Strug car and suffered personal injuries and the Strug automobile was damaged in the admitted sum of $360.37, and the Charles car was damaged in the alleged amount of $437.34.
In her suit Mrs. Strug alleges, that as a result of the said collision, she suffered severe bruises and contusions of her entire body, that she was knocked unconscious and suffered a concussion, that her head was split open and that her back and shoulder were injured to such an extent that she developed myositis of the right side of the neck and a bursitis of the shoulder from all of which she is still suffering and that said injuries are permanent in nature. She alleges that she suffered damage in the total sum of $7,500, and that the accident was caused by the sole negligence of D. M. Charles and particularly in the following respects:
“1st. In driving his Buick Convertible automobile at an excessive and highly dangerous rate of speed of approximately 80 or 90 miles per hour;
“2nd. In not keeping his automobile under proper control;
“3rd. In not keeping a proper lookout while driving his automobile;
“4th. In not having his automobile equipped with proper brakes.”
In the Strug case the defendant, The Travelers Indemnity Co., the insurer of D. M. Charles against liability denied any act of negligence on the part of Charles and further alleged that the sole cause of the accident was the negligence of Morris Strug in making a sudden left turn across *439 the highway without observing the oncoming Charles car and in thereby placing the Strug car across the path of the Charles car when the Charles car was so close to the Strug car that there was nothing which Charles could do in order to avoid the collision. The answer further alleges that Strug had the last clear chance to avoid the accident; in effect, that he should have seen the Charles car proceeding and should have stopped in order to allow it to pass before continuing his left turn. The answer further sets forth that Morris Strug and his wife were on a joint venture and mission for the community and that therefore the negligence of Morris Strug is imputable to his wife, Mrs. Ida V. Strug, the plaintiff in the first named suit. It may be noted that the Strugs were merely on a pleasure drive. In the alternative, the defendant in the Ida V. Strug suit further alleges that in the event that D. M. Charles is found guilty of negligence, then and in that event “that Morris Strug and his wife, Ida Strug, were guilty of contributory negligence of such a degree as to bar a recovery by plaintiff herein”. The specific acts of negligence alleged are as follows:
“a- In Morris Strug failing to observe the oncoming car of Daniel M. Charles.
“b- In Morris Strug suddenly and without warning swerving from his right and proper lane of traffic into the lane of traffic reserved for oncoming cars, in the face of the close and oncoming car of Daniel M. Charles.
“c- In Morris Strug failing to wait until all traffic lanes were sufficiently clear to allow him to turn around in the highway, always a maneuver fraught with danger and demanding the utmost of caution.
“d- In plaintiff’s allowing her husband to commit the acts of gross negligence alleged in a, b, and c above, without protest.
“e- In plaintiff failing to observe the oncoming car of Daniel M. Charles.”
The second suit is on behalf of the Travelers Fire Insurance Co. as collision insurer of D. M. Charles and on behalf of D. M. Charles as owner, for the damages sustained in the accident by the Charles automobile. That suit is against Morris Strug wherein demand is made for the total sum of $432.34 representing $383.34 paid by the insurer and $50 represented by the deductible portion of the insurance payable by D. M. Charles for the repair of the Charles automobile.
To the second-suit Morris Strug filed an answer in which he reiterates the allegations of negligence on the part of D. M. Charles set forth in the Strug suit and in which he makes a reconventional demand for the damage to his car in the sum of $360.37.
After trial of the case the trial judge came to the conclusion that the accident was caused by the sole negligence of Morris Strug, and consequently in the case of Mrs. Ida V. Strug v. Travelers Indemnity Co. of Hartford, Connecticut, rendered judgment in favor of the defendant and against the plaintiff rejecting her demand at her cost and in the case of D. M. Charles and Travelers Fire Insurance Co. v. Morris Strug rendered judgment in favor of D. M. Charles and against Morris Strug in the full sum of $50 and in favor of the Travelers Fire Insurance Co. against the defendant, Morris Strug in the full sum of $360.84 and condemned the defendant to pay all costs of court.
Mrs. Ida V. Strug, plaintiff in the first suit and Morris Strug, defendant in the second suit, have perfected appeals to this court..
The important question involved in the case is a factual one: to-wit, how did this accident occur and whether it was caused by the negligence of Morris Strug or of D. M. Charles or by the concurrent negligence of both. The trial judge made the finding of fact that the accident was caused by the sole negligence of Morris Strug in improperly making a left turn in the face of an oncoming car and in thereby creating an emergency wherein D. M. Charles although exercising his ' best judgment, could not avoid the collision. Of course, unless we can find manifest error in that finding of fact we are bound to affirm the judgment.
*440 As brought out by the trial judge in his written reasons, there were four witnesses who saw the accident, to-wit, Morris and Ida V. Strug, the occupants of the Buick automobile which was traveling south and which made the left turn, and D. M. Charles, the driver of the Buick which was traveling north and collided with the Strug car and Louis Gates, the driver of the car which was traveling south and passed the Strug automobile a short while before the accident, and who testified that he saw the collision through his rear view mirror.
Morris Strug testified that just prior to making the left turn he pulled to his right and permitted the Gates automobile to pass him. He is corroborated by Gates in this respect. He further testified that at this time he noticed a car, the Charles car, coming around a curve at a distance of approximately one half mile according to the contention of the plaintiff, Mrs. Ida V. Strug, but 3/10ths of a mile according to the evidence, from the situs of the accident. He further testified that feeling he had sufficient time to make the turn he went ahead and executed the turn and that he had gotten into the Garner driveway when suddenly the Charles automobile struck the rear of his car and turned it around. As brought out by the trial judge, at one place in his testimony Strug said that his car was completely off the paved portion of the highway, while at another point of his testimony he states that the rear end of the car was protruding unto the eastern side of the pavement.
Mrs. Strug testified very much like her husband except s'he states that she did not see the Charles car until the Strug car had completed its turn and had gotten into the Garner driveway and at that time the Charles car was just coming around the curve in the road. It may be noted that since this curve is shown to be 3/10ths of a mile away from the situs of the accident, Mrs. Strug is obviously mistaken as to where the Charles car was subsequent to the making of the left turn by her husband. Both Mr. and Mrs. Strug testify that the Charles car was coming at a very rapid rate of speed of over 70 miles per hour.
Charles testified that he traveled about %oths of a mile from the curve in a northerly direction before he noticed the Strug automobile either parked or traveling slowly on the western side of the highway; that he was traveling at a rate of speed of about 45 miles per hour and that when he reached the point between 50 and 60 feet of the Strug car it suddenly turned across the road in front of him, in his lane of travel and that he thereupon accelerated his car in order to go to the left around the rear end of the Strug automobile, but that since the rear of the Strug automobile was about in the center of the highway, it was impossible for him to go around it and that consequently his right front wheel and fender struck the Strug automobile near the right rear bumper and trunk thereof. ..* i <
Witness Gates testified that when he passed the Strug automobile he had the impression that it was going to stop or make a left turn and that shortly thereafter he met the Charles automobile going north and traveling at a rate of speed approximated by him at 50 miles per hour. He testified that shortly thereafter he was looking through his rear-view mirror and that he saw the accident and that at the time of the collision, the rear part of the Strug automobile was on the eastern half of the pavement. He further states that he heard the brakes on the Charles car screech and that he knows that Charles made an effort to pull to the left. Gates further testified that he went back to the scene after the accident and that he saw skid marks in about the middle of the eastern side of the highway made by the Charles automobile.
With reference to the skid marks we also have tire testimony of a State Highway Policeman, Clarence Wagner, who visited the scene and found skid marks about 1 to lj^ feet to the west of the eastern edge of the pavement.
The pertinent testimony of Officer Wagner is as follows:
“Q. You made an investigation at the scene of the collision? A. Yes.
“Q. From your investigation could jmu tell me where the point of impact was? A. Yes.
*441 “Q. Would you tell us? A. It was near the'east side of the pavement on the pavement.
“Q. In other words, the collision or impact actually took place on the pavement? A. Yes.
“By the Court:
“Q. How near the east side? A. A Foot.
“Q. Within a foot of the east side of the edge of the pavement? A. Yes. The Buick was travelling as one would travel normally, the Buick driven by Mr. Charles. The Strug car was definitely partly on the highway. It would have had to be for the other Buick to hit it. It was 1 foot or 1% feet.
“Mr. Watts:
“Q. From your investigation the rear of the Strug car was on the highway? A. Partially.
“Q. Mr. Strug was doing what, making a left or making a right turn? A. Left turn.
“Q. Over Mr. Charles’s lane of traffic? A. That is right.
“Q. After the collision would you give me the location of the Charles car when you arrived? A. Possibly 100 feet to the north, 100 feet down.
“Q. Was the Charles car still on the highway? A. Yes. The front wheel may have been on the shoulder. It had turned east.”
The trial judge after reviewing the testimony has this to say: “From the testimony of the occupants of the respective cars involved in the collision, viz.: Mr. and Mrs. Strug and D. M. Charles, when considered in the light of the testimony of Gates, the other eye witness, and Officer Wagner, who observed the physical facts immediately after the accident, it is obvious that none of the occupants of the cars involved in the collision gave an accurate account of what transpired immediately prior to said collision. Both Mr. and Mrs. Strug testified that their Buick automobile was completely off the paved portion of the highway when the accident occurred, and certainly this could not be true in the light of the testimony Gates and Wagner, who testified to the collision occurring on the eastern side of the pavement. Further than this, if Mr. Strug saw the Charles car approaching 3/10ths of a mile away, when he started to make his turn across the highway, then he would have been completely off the highway before the Charles car arrived at the point of collision. The testimony of Charles shows that he was traveling between 43 and 45 miles an hour when he rounded the curve and the testimony of Gates, who- impresses me as an impartial witness, is to the effect that immediately prior to the collision the Charles car was not traveling more than 50 miles an hour. Three-tenths of a mile is, of course, 528 yards and certainly if, when Mr. Strug started to make the left turn, the Charles car was 528 yards away, traveling at 50 miles per hour, then Strug would have had more than abundant time to have cleared the highway before the Charles car reached the point of collision. It is shown that the paved portion of the highway at that point was 18 feet and making allowance for the length of the Strug car, say of 8 feet, then Strug would have had to travel not more than 17 or 18 feet to have been off the highway. If his testimony is accurate, he could have long since been off the highway when he had to travel say only 20 feet at 5 miles per hour. However, it is, of course, contended by Strug that he was off the highway when the Charles car struck his car but this testimony is refuted by the two impartial witnesses, Gates and Wagner. Mrs. Strug, like her husband, testified that their car was off the paved portion of the highway at the time of the collision, but further than this she went so far as to testify that she did not see the Charles car coming around the curve until the Strug car was off the paved portion of the highway and in this her testimony was even inconsistent with that of her husband. Charles testified that when he was within 50 or 60 feet of the Strug car it suddenly turned to the left, across his lane of travel and that, since he realized the application of the brakes would cause his car to continue in a straight line and therefore strike the Strug car in about the middle thereof, he did not apply his brakes but ‘accelerated *442 his car’ and attempted to pass to the left or around the Strug car, the rear end of which was in the vicinity of the center of the paved portion of the highway. Again it is obvious from the testimony of both Gates and Wagner that Charles did apply his brakes and I am further satisfied that he attempted to cut to the left of the Strug car but failed to making the maneuver. It is of course possible that he ‘accelerated his car’, as he terms it, but I am satisfied this was subsequent to the time he applied his brakes and at a time when he was trying to pass to the left or around the Strug car.”
The trial judge makes the further finding of fact that from the evidence Charles was traveling at a rate of speed of approximately 50 miles per hour and that the Strug car was moving at a rate of speed of hardly more than 5 miles per hour and by a comparison of the respective speeds, he reaches the opinion that the Charles car was between 125 and 150 feet away when Strug started to make the left turn across the highway and that the left turn attempted when the oncoming Charles car was that near was dangerous and constituted negligence and created an emergency. The trial judge makes the observation that a left turn across a highway constitutes one of the most hazardous maneuvers that a driver is called upon to perform and that fhe responsibility for seeing that such a turn can be made is placed on the motorist making the left turn and he should be certain that it can be made without danger to normal overtaking or oncoming traffic, citing, Swinney v. Primeaux, La.App., 40 So.2d 754; Fidelity & Guaranty Fire Corporation v. Ritter La.App., 37 So.2d 349; Michelli v. Rheem Manufacturing Company, La.App., 34 So. 2d 264; and Home Insurance Company v. Warren, La.App., 29 So.2d 551. Also Act 286 of 1938, Par. 3, Rule 9, LSA-RS 32:235.
The trial judge further states: “Further than this, a driver has the right to presume that drivers of vehicles approaching from the opposite direction will obey the laws and remain on their proper side of the highway. Teche Line v. Gorum, 202 La. 993, 13 So.2d 291.”
We can see no manifest error in the findings of fact of the trial judge and we also agree with his final opinion that when Strug made the left turn across the highway, under the circumstances brought out by the evidence, he did not ascertain that it could be made in safety and he obviously misjudged the distance of the approaching car driven by Charles. In this connection it may be noted that he stated in his testimony that he first saw Charles when he was making the turn at the curve which he estimates to have been at a distance of about 1/2 mile. As a matter of fact, the evidence shows that the curve was at a distance of 3/10ths of a mile and further that since the Gates automobile passed the Strug car at about the time Charles was making the curve, Strug’s view was probably obstructed by the Gates car as was Charles’ view obstructed from seeing the Strug car. Charles testified that he first saw the Strug car when he was at a distance of about l/10th mile from it and most probably Strug saw the Charles car at about the same time. In any event, we agree with the trial judge that Strug/s act of making the left turn was the proximate cause of the accident and that this left turn made across the highway was so sudden that it created an emergency and that there was nothing which Charles could do to avoid the accident. Possibly Charles could have gone around the Strug car to his left had he anticipated the full maneuver performed by Strug, but it seems obvious that he presumed and had the right to presume that Strug would not enter his lane of travel until after he had passed. Even if it should be found that Charles made an error of judgment when faced by the emergency created by the negligence of Strug, he still should not be penalized. McDonald v. Zurich General Accident & Liability Insurance Company, La.App., 25 So.2d 923; Crawford v. Zurich General Accident & Liability Insurance Company, La.App., 42 So.2d 553; Teche Lines v. Gorum, 202 La. 993, 13 So.2d 291.
It may be contended that Charles was also guilty of negligence contributing to the accident, in that he saw the Strug car when about 528 feet away and possibly should be *443 charged with notice that a left turn was being made and therefore should have slowed down until Strug completed his maneuver of making a left turn. However, we are of the opinion that the better view is that Charles had a perfect right to presume that Strug would not come into his lane of traffic until he had passed and that, therefore, as found by the trial judge, he was free of negligence.
Finding no manifest error committed by the trial judge, for these reasons assigned, the judgment in the case of Mrs. Ida V. Strug v. The Travelers Indemnity Co. of Hartford, Connecticut is hereby affirmed at her cost. A separate decree will be rendered in the other case of D. M. Charles v. Morris Strug, La.App., 53 So.2d 443, affirming the judgment therein at defendant’s cost.