On September 4, 1944, the Chrysler automobile of Sam Michael was damaged in an accident with a gasoline truck belonging to the Warren Gas Company, on the paved highway in Washington Parish, about 6 miles north of the Town of Franklinton. The automobile was insured against damage by the Home Insurance Company of New York, the policy containing the usual $50 deductible clause.
The damage amounted to the sum of $355.50 and accordingly the insurance company had to pay Michael the sum of $305.50, which it did. It then became subrogated to his claim in order to institute this suit against the Warren Gas Company, a commercial partnership, owners of the gasoline truck, and also against the Hartford Accident Indemnity Company which had insured that truck against public liability. The suit is based on the alleged negligence of the driver and the operator of the gasoline truck. The negligence charged against him consists in his having made a sudden left hand turn on the highway into a gravel road at a distance so close to the Chrysler automobile as it approached him from the opposite direction, as to make it impossible for the driver of that automobile to avoid running into the truck. The necessary allegation that the driver of the truck was at the time engaged in the performance of his duties as an employee of the Warren Gas Company is also made and that is not controverted by the defendants.
The defendants filed a joint answer in which they practically deny all the allegations of the petition and allege that the truck was travelling at a rate of speed of about 15 to 20 miles per hour, and as it reached that portion of the highway in *Page 552 
front of the store of J.S. King, the driver proceeded with all due caution, and having ascertained that there was no traffic in view, turned to his left across the highway, and was about to stop in the driveway in front of the store when he noticed the Chrysler automobile approaching from the opposite direction at a speed of about 60 miles per hour. They then allege that the driver of the Chrysler, upon apprehending the danger which confronted her, became excited and lost control of the car, throwing her hands off the steering wheel, and ran into the side of the truck which had already pulled four feet off the highway and stopped in front of the store. In the alternative the defendants plead that if the court should not hold that the cause of the accident was the gross negligence of the driver of the Chrysler automobile then it should hold that she was guilty of contributory negligence which would bar recovery by the plaintiff.
On these issues the case was tried in the lower court and resulted in a judgment in favor of the plaintiff, whereupon this appeal was taken by the defendants.
[1] The law as has been so frequently cited in different cases, makes it incumbent upon the driver of a motor vehicle attempting to execute a left hand turn on a public highway to take such precautions and to be so careful that it would hardly seem necessary for the courts to have to make any further statement beyond what is contained in the statute itself. We had occasion to cite it very recently in the case of Lane v. Bourgeois, La. App., 28 So.2d 91, and in which we referred to other recent cases. The rule as laid down in the statute, Dart's Sec. 5214, Act No. 286 of 1938, § 3, rule 9, makes it the duty of the driver in 'such cases to yield the right of way to approaching traffic and prescribes that he "shall notattempt to make a turn unless and until the said way is clear."
(Italics ours.)
In this case the driver was operating a truck, and although its dimensions are not given, we imply from the fact that it was a gasoline truck that it was a rather long and heavy one. Its length and size imposed an additional duty on his part because obviously it is not as easy to handle such a vehicle in excecuting a left hand turn on the highway as it is a lighter and shorter one.
We do not think that the driver was driving fast and as a matter of fact believe he had slowed down to such a speed, just about when he was to make the turn, as to have led the driver of the Chrysler car to believe that she was being invited to proceed and pass on before he would begin to make his turn. He appears not to have been keeping a proper lookout as he admits himself that he did not give any signal or warning that he intended to make the turn, because he did not think it necessary to do so as there was no traffic in the rear of his truck nor did he see any in the front. Why he did not see the Chrysler automobile approaching from the front however, is a question which he has not satisfactorily explained. There seems to have been an attempt made to show that there was a curve in the road ahead of him and that he did not see the car because it was coming at a rapid rate of speed in that curve. From the testimony we find in the record, we are unable to say exactly how far ahead of him that curve was. The nearest distance shown with any degree of accuracy arises out of some testimony to the effect that it started near a point where there was an artesian well, on the west side of the road, and that distance is estimated by one of the witnesses as being about 40 yards from King's store. Forty yards of course would mean 120 feet and in that distance it would seem that the driver of the truck should have realized that there was some danger involved in his trying to make a left turn in front of the approaching car. If he did not see it, it was because he wasn't looking. There is no testimony in the record to show how sharp or gradual the curve was and it may even be that he could have seen it before when it was still in the curve.
[2] At any rate we are of the opinion that the driver of the truck started to make his left hand turn at a time when he should not have done so had he been keeping a proper lookout. When he did see the car he says he had started to go to his left and did not have time to straighten out his truck on the highway. By this it looks as *Page 553 
though he meant that he had started to gradually drive to his left in order to stop his truck in front of the King store, on a line parallel with the highway. But this is unbelievable for the reason that if that is the way in which the accident happened, there could be no explanation why the rear right end of the truck was struck a head on blow by the front of the automobile. We are convinced of his negligence and the only thing that could bar the plaintiff's recovery would be the negligence, if any, of the driver of the automobile.
It is alleged in the answer that she was driving at a rate of speed of 60 miles and it is testified by the driver of the truck that when he saw her she was going 50 miles per hour. Another witness standing in the door of the store, says that she was going 45 miles per hour. All of these estimates cannot be supported when we come to consider the physical facts which resulted from the impact between the two vehicles. Had that car been going at anything like 50 miles per hour it stands to reason that the impact would have been very much more severe and the resulting damage to the automobile would have been very much greater. We believe that the occupants of the car were fortunate indeed that the driver was travelling at the rate of speed she was, as otherwise some of them might have been seriously injured. Therefore we can well discard that element of negligence charged against the driver of the car.
She and her husband, the owner of the car, and a little child about 10 years of age occupied the front seat and three other ladies occupied the rear seat of the car. All of them testified except the child, and they are all positive that Mrs. Michael was not driving more than 35 miles per hour and that if she did at any time before, she certainly slowed down as they approached the artesian well at least 40 yards distant from the scene of the accident. Some of them knew about this flowing well and wanted to call it to the attention of the others. From there on, they all could see the truck and in fact its presence on the highway was called to her attention by her husband who, she says, told her about it and said that it might make a left hand turn in the gravel road. If there was any negligence on her part at all, it could, in our opinion, be traced to this remark made by her husband which may have served as a warning to her to be careful and to guard against the possibility of the truck making such a manuever on the road. Why he made that remark to her is not very plain. From it, it might be inferred that when they were still that distance away, the truk had started to make its left hand turn. If it had, naturally she was called on to heed the warning and to make use of the chance which she then had to bring her car to such a speed, or even stop it if necessary, to avoid the accident.
It is said that her husband is of an excitable disposition, his wife referring to him as a "back seat driver" and that there was no occasion for him to mean that there was danger ahead when he made such a remark. Mrs. Michael is positive in her testimony that she was watching the truck's movements and that at that time it had not started to make the turn. If anything, it was slowing down to such an extent that anyone might have been led to believe it would make the turn, and by the fact also of its slowing down, she had the right to assume that the driver would give her a chance to pass by in safety before he did turn. We are sure that at the moment her husband made the remark that the truck had not actually started to turn because if it had she would have run into it while it was still in the process of crossing over the black top surface of the highway or most probably it would have cleared that portion of the highway in time for her to have pulled over slightly to her left and gone by.
[3] We believe that her account of what happened is correct. She saw the truck slowing down and accepted that as an invitation for her to continue on, as she had the right of way, before the driver of the truck would start to make his turn. Instead of waiting for her however he started to make the turn and she, seeing herself then in a position of danger, and figuring that her best way of escape was to also turn into the gravel road with the truck, on her right, that is what she started to do. Unfortunately, she was unable to *Page 554 
accomplish her turn and the accident occurred. Even though she may not have done the best thing or exercised the wisest choice in trying to avert the accident, she was confronted with an emergency which suddenly appeared before her and under the well recognized sudden emergency doctrine even though her choice of escape was not the safest, she cannot be held guilty of negligence on that score alone. The situation was one which was created by the negligence of the driver of the truck himself and she had no part in creating it.
The trial judge assigned written reasons for judgment which we consider very persuasive. Surely we cannot say that he has manifestly erred in his finding of fact and therefore the judgment appealed from will be affirmed.
Judgment affirmed at the costs of the defendant, appellant herein.