50 So.2d 318 (1951)
MYERS
v.
LANDRY et al.
No. 19688.
Court of Appeal of Louisiana, Orleans.
January 29, 1951.
Porteous & Johnson and Charles F. Seemann, all of New Orleans, for Robert M. Myers, plaintiff and appellee.
St. Clair Adams & Son and W. Ford Reese, all of New Orleans, for Robert M. Myers and Utica Mut. Ins. Co., defendants in reconvention.
Normann, Schonekas & Normann, New Orleans, for defendants and appellants.
McBRIDE, Judge.
Plaintiff's automobile, a 1948 Mercury, was involved in a collision on January 11, 1949, at 4:00 p.m., at the intersection of St. Charles Avenue and Cadiz Street, with a Chevrolet automobile owned and driven by W. T. Landry, and plaintiff, alleging that the accident was caused through the negligence of Landry, brings this suit against Landry and his liability insurer, Zurich General Accident and Liability Insurance Company, Ltd., for $243.70, the amount of the damages sustained by his automobile.
The defendants, after denying that the accident was caused through the fault of *319 Landry, alternatively pleaded Myers's contributory negligence as a bar to his recovery. By way of reconvention, Landry sought to recover from Myers and his liability insurance carrier, Utica Mutual Insurance Company, the damages to his automobile, which are alleged to amount to $150.
The court a qua rendered judgment in favor of plaintiff and against both defendants, jointly and in solido, for the amount prayed for. Landry's reconventional demand was dismissed. Defendants have appealed from the judgment; however, Landry's reconventional demand is not before us, as his counsel informed us during the course of argument that the demand has been abandoned.
St. Charles Avenue, which parallels the Mississippi River, is one of the main traffic arteries in the City of New Orleans. It has two paved lanes for vehicular traffic, separated by a wide neutral ground, upon which there are two streetcar tracks. Cadiz Street, which is also paved, intersects St. Charles Avenue at right angles.
Plaintiff's automobile was traveling down St. Charles in the direction of Canal Street. Immediately before the accident, Landry had been driving his automobile on St. Charles toward uptown in the opposite traffic lane, and upon reaching the intersection of Cadiz Street, Landry made a left turn, crossed the neutral ground, and entered into the other traffic lane of St. Charles Avenue, in which Myers was traveling, in order to go in Cadiz Street toward the river. Both drivers blame the other for the accident.
For some reason, Landry did not appear at the trial of the case below, but counsel for all parties agreed and stipulated as to how he would have testified were he present in court. The stipulation was dictated into the record and is incorporated with the transcribed testimony. Such a stipulation is valid and represents the understanding between the parties, which in this case is what Landry would have testified to had he been in court, and the stipulation must be given the same probative value as if Landry had testified from the witness stand.
Landry's automobile was struck about the right rear fender by the front of plaintiff's car. There is some conflict as to whether the cars came together in the middle of the intersection formed by the downtown traffic lane of St. Charles Avenue and Cadiz Street, or farther toward the sidewalk curb of St. Charles. We glean from the evidence that the accident happened when the Landry car had passed a little beyond the middle of the intersection, and the front part of the Landry car was near the sidewalk curb when the Myers automobile hit it about its right rear wheel.
Myers testified that he was driving in the middle of the downtown lane, at about twenty-five or thirty miles an hour, and that there was a streetcar to his left, which had stopped near the corner of Cadiz Street, and that just as his automobile was the length of the streetcar from Cadiz Street, the Landry automobile suddenly emerged from in front of the streetcar directly into his path. Myers says he applied his brakes to avoid striking Landry's car, but that the stopping distance was too short, and the cars collided.
The stipulation is to the effect that Landry would have testified that, after making the left turn, he stopped on the neutral ground to observe traffic coming down St. Charles, and that he allowed two or three cars to pass. He then noticed plaintiff's automobile some distance away from Cadiz Street, and he attempted to negotiate the crossing of plaintiff's lane. Landry claims that there was ample time to make the crossing with safety, but that Myers accelerated his speed to forty miles an hour, then swerved to the right and struck his car on the rear of its right side.
The crew of the downtown-bound streetcar appeared as witnesses for plaintiff. The testimony of Rault, the conductor, seems to bear out plaintiff's statement as to his speed. Rault noticed the Myers automobile pass his streetcar at about twenty-five miles an hour, and he then heard a crash.
*320 Ortega, the motorman, explained that his streetcar had been traveling down St. Charles Avenue, and that he made a safety stop about eight feet before reaching Cadiz Street, as there was an uptown-bound streetcar on the opposite track discharging or taking on passengers, and that while his car was thus stopped, he saw Landry's automobile come from behind the other streetcar and cross the neutral ground. Although Landry says he stopped on the neutral ground to observe traffic in the downtown lane, Ortega stated that while Landry's automobile was traveling at a slow speed, it did not stop. On cross examination, Ortega admitted that he did not know whether Landry had stopped before crossing the first streetcar track, "because my vision was blocked."
All parties, in their pleadings, relied upon Ordinance No. 13,702, C.C.S., of the City of New Orleans, which regulates traffic on the city's streets. However, the ordinance was not offered in evidence, and we are, therefore, neither required nor privileged to take its provisions into consideration. DiLeo v. DuMontier, La.App., 195 So. 74.
A careful sifting of the evidence convinces us that the accident was caused solely and only through the imprudence and negligence of the defendant Landry. In view of the testimony of Myers, which is corroborated by the conductor, Rault, we do not believe that the Myers automobile was traveling at a rate of speed of forty miles an hour, which Landry attributed to it.
We also believe that the greater weight should be accorded to Ortega's testimony that Landry did not stop after leaving the first car track on the neutral ground. And this being true, it is selfevident that Landry was guilty of negligence in driving his automobile from the neutral ground, a place of safety, into the downtown roadway in the path of oncoming traffic which was in close proximity of Cadiz Street. It must be remembered that Landry made his left turn across two car tracks on the neutral ground, and into the downtown lane of St. Charles Avenue in which several vehicles were traveling. The law is to the effect that the operator of a motor vehicle, desiring to turn left, carries the responsibility of being certain that the turn can be made without danger to normal overtaking or oncoming traffic, and he must yield the right of way to such vehicles. Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264, and cases therein cited.
Even if we accept as true Landry's claim that he surveyed the traffic movement in the downtown lane, he paid no heed to the existing conditions, otherwise he would have refrained from driving into the path of Myers's automobile, and this would particularly hold true if Landry had stopped as he claims. We are led to the belief that the downtown-bound streetcar, which had made its safety stop near Cadiz Street, obscured Landry's view of the oncoming Myers automobile.
The only remaining point worthy of discussion is the argument of defendants' counsel that even if Landry was at fault in entering the intersection in front of Myers's car, nevertheless the accident could have been averted if Myers had swerved to his left and passed behind Landry's automobile. Myers testified that he was suddenly confronted with the presence of the Landry automobile, and that he immediately applied his brakes, but that the distance was too short to avoid the collision. It may be that Myers could have swerved to the left and by doing so he would have avoided the accident, but the proximate cause of the accident was the dangerous emergency created by Landry in driving into the path of the approaching Myers car, and the defendants cannot successfully say that the accident could have been avoided by the exercise of extraodinary care by Myers. The sudden emergency doctrine is applicable here. The law is well settled that where one himself creates an emergency, he cannot defend himself on the ground that the other party was negligent merely because he, in the emergency, fails to exercise perfect *321 judgment. Nixon v. Cloverland Dairy Products Co., Inc., La.App., 49 So.2d 352.
It is conceded that plaintiff's automobile was damaged to the amount of $243.70.
The judgment appealed from is affirmed.
Affirmed.