79 So.2d 376 (1955)
Warren Mack TYLER et al., Plaintiffs-Appellants,
v.
MARQUETTE CASUALTY COMPANY, Defendant-Appellee.
No. 8301.
Court of Appeal of Louisiana, Second Circuit.
March 22, 1955.
Rehearing Denied April 14, 1955.
*377 Booth, Lockard, Jack & Pleasant, Shreveport, for appellants.
Wilkinson, Lewis & Wilkinson, Shreveport, for appellee.
GLADNEY, Justice.
This action is for the recovery of damages arising from an automobile accident which took place on what is known as the Pine Hill Road of Caddo Parish. Plaintiffs are Warren Mack Tyler, Alonzo Tyler and Evelyn Tyler. The defendant is the insurer of Walter P. Anderson, the owner and operator of the Ford truck involved in the collision with a Ford custom Tudor automobile, the property of Alonzo Tyler, operated at the time by his minor daughter, Bobbie Jean Tyler, eighteen years of age.
On October 25, 1953, about 12:45 P.M. Bobbie Jean Tyler was driving the automobile on the Pine Hill Road in an easterly direction and approaching the driveway of Walter P. Anderson, located on the south side of the highway. At the same time Anderson was coming from the opposite direction with the intention of making a left turn across the highway and entering his driveway. When the Tyler car was a short distance west of the driveway, approximately fifty feet, it turned sharply to the left and struck the right front of the truck, the point of impact occurring on the north side of the highway slightly east of Anderson's driveway. The cause of the accident is attributed by plaintiffs to the Anderson truck moving into the south lane of traffic by commencing *378 a left turn, which maneuver caused Bobbie Jean Tyler to turn the Ford automobile toward the left in an effort to avoid a collision. Defendant asserts Anderson, upon observing the approach of the Ford Tudor car, brought the truck to a stop entirely on the north side of the highway to await the passing of the Tyler car, and that Bobbie Jean Tyler became excited and changed the course of her car.
Following a trial on the merits there was judgment in favor of the defendant, rejecting the demands of plaintiffs, hence this appeal. The judge a quo has assigned written reasons for his decree.
In presenting the case to this court counsel for appellants argues the findings of the trial court were in error: first, as to the location of the point of impact and the positions of the two vehicles at the moment of impact; second, in giving too much weight to the testimony of Captain H. M. Terry, a deputy sheriff who testified that Bobbie Jean Tyler stated to him after the accident: "It looked as if he was going to turn into his driveway"; third, in concluding the testimony of the witnesses who rode in the Anderson truck fully corroborated Anderson's testimony that the truck remained at all times on the north side of the highway; and, fourth, in disregarding completely the testimony of the witnesses for plaintiff in the absence of impeaching evidence.
At the scene of the accident the Pine Hill Road is a black-topped state highway approximately fifteen feet in width with shoulders extending several feet on either side of the hard surface. There the road is comparatively straight for several hundred feet in either direction. About six hundred feet west of the Anderson driveway the highway tops a hill which results in a slight down grade toward the east. The weather was clear and the road dry.
Accompanying Bobbie Jean Tyler on the front seat of the Ford Tudor automobile were her cousins, Dorothy Nell Tyler and Evelyn Tyler, and on the rear seat were Billy Tyler and Billy Hutchinson, each twelve years old. The Tyler car was returning from church and was traveling at a rate of speed established as not being in excess of fifty miles per hour. Anderson was driving a Ford pick-up truck proceeding westerly. Accompanying him were Mrs. Hedrian, his married daughter, Thelma Anderson, his fifteen year old daughter, and Juanita Wheeler, a young friend of Thelma Anderson. Mrs. Hedrian, seated next to Anderson, was holding in her lap her seventeen months old son. Juanita Wheeler was seated to the right of Mrs. Hedrian and seated upon her lap was Thelma Anderson. All of the occupants of the two cars testified. Further evidence consists of certain photographs taken shortly after the occurrence which show the Ford automobile in its position following the impact. The Ford truck was moved from the scene of the accident by Anderson before the pictures were taken, but a photograph shows the extent and nature of damage inflicted to this vehicle. The photographs show the locale and reflect the skid marks of the Tyler car. Some debris possibly resulting from the impact is indicated in the pictures but we think the evidence insufficient to establish whether such was due to the impact. It is significant, it seems to us, that the left side of each vehicle was not damaged in the severe collision. That only the right front sides of the two vehicles were affected creates doubt as to the correctness of the finding of the trial court the Anderson car was completely on its side of the road at the time of the collision. The photographs show the Tyler car came to rest with both of its right wheels very close to the center of the highway and with its left wheels two feet or more from the north edge of the road. Traffic attempting to pass could have experienced no difficulty in remaining on the black top in passing to the south side of the Ford Tudor automobile.
Bobbie Jean Tyler, an employee of a Shreveport bank, testified that as she came over the hill west of the place of collision she first saw Anderson and when a short distance awaywhich she incorrectly estimated at fifty feethe began to turn in front of her whereupon she applied her brakes and pulled to her left in an effort to go behind him. Simultaneously, she said, *379 Anderson jerked his car back to the right and the right front fenders of the two cars met. She said when she first saw Anderson he was in the middle of the road some distance away from her and she then was traveling about forty-five miles per hour. Evelyn Tyler gave substantially the same testimony, stating that when within about forty feet from Anderson he attempted to make a left turn and then after Bobbie Jean Tyler had applied her brakes and turned to the left to try to miss him, Anderson turned back toward the right and the two right front fenders came together. Dorothy Nell Tyler testified that she was looking out into the field and did not observe the Anderson truck prior to the wreck. She was rendered unconscious by the collision. Billy Tyler and Billy Hutchinson, the two twelve-year old boys who were on the back seat gave testimony corroborating that of Bobbie Jean Tyler. Both of these witnesses, despite their ages, expressed themselves clearly in answer to questions of counsel on both sides.
In addition to the occupants of the Anderson truck who testified, appellants rely upon the testimony of Captain H. M. Terry, M. L. Parrott, an adjuster for the defendant insurance company, and Jack Anderson, a brother of the defendant. Captain Terry testified he arrived at the scene of the accident shortly after its occurrence and made an official report. He said there was only one set of skid marks which he measured and found to be approximately fifty-four feet. They were made by the Tyler automobile. The skid marks began in the south traffic lane and ended in the north lane, indicating the wheels moved in a curve to the north or left. He testified Bobbie Jean Tyler related to him the Anderson car looked as if it was going to turn in front of her and she applied her brakes. From this statement Captain Terry inferred the truck had not begun to make a turn when Bobbie Jean turned her vehicle to the left. It was developed on cross-examination that the report from which Terry was testifying was a different report from that which was made at the time of the conversation. Captain Terry apparently was not too positive about the exact words used by Bobbie Jean Tyler for he testified:
"A. As well as I remember, she said when she came over the hill and started down the hill, she saw the car, and it looked as if it was going to turn in front of her, and she applied her brakes.
"Q. As she came over the hill? A. No sir, it was a further distance away I believe I do recall talking to her about itI am not sure, because if it isn't on the report, I am not sure what she said."
M. L. Parrott, an insurance adjuster, testified he obtained signed statements from Thelma Jean Anderson, Evelyn Tyler and Dorothy Nell Tyler. He insisted he was never told by anyone Anderson's truck had crossed the center of the road. He said he was told by the Tyler girls they thought Anderson's truck was going to make a left turn across the highway and it frightened them. He stated that he told the two Misses Tyler that he would not take a statement from them unless one of their parents was present, testifying further that Mrs. Tyler, the mother of Bobbie Jean was present at the time he took the statement. Mrs. Alonzo Tyler, mother of Bobbie Jean Tyler, in rebuttal, denied that she was present when the statement was supposed to have been taken. The witness was undoubtedly confused as to the identity of Bobbie Jean Tyler.
Walter P. Anderson, driver of the truck, said he was driving east on the Pine Hill Road and saw the girls approaching. He pulled over to his side of the road, pulled up to his driveway, signaling a turn with his hand, and then stopped. He remained stationary a second or two, waiting for the Ford automobile to come by, when its driver applied its brakes and pulled over into him. He said he had never moved over the center of the road but was near the center of the road. He said he saw the girls when they were about middle way of the hill and he could not estimate their speed but would say they were making fifty to fifty-five miles per hour. He stated his truck was hit by the right fender of the Ford automobile *380 exactly in the center of the front bumper and his right fender was caved in. His car, he declares, was stopped parallel to the side of the road and was not turned to the left at all. On cross-examination, Anderson was confronted with a written statement previously given wherein he said:
"A. When I stopped, I suppose my front left wheel was right on the center line."
He also gave this additional testimony:
"Q. And you moved your truck off the road? A. Well, I had backed it up, yes sir.
"Q. And got it out of the way when the photographer came? A. Yes, sir, so the traffic could get by."
Mrs. Ruby Lee Hedrian was seated in the middle of the seat next to her father, holding her seventeen months old baby. She said Anderson had slowed down and had given a signal to turn; that he saw the Tyler car coming and stopped. After first stating that she was positive that her father had not turned toward the center of the road she admitted that he may have turned a foot but was not over the center line and stopped because he saw the Tyler car coming. She then testified:
"Q. After turning, like you say, barely a foot, did he turn back to the right any, after that?
"A. He turned back just enough, I mean to stophe turned the wheel like that, and then right back. (Indicating) I don't know if he had pulled over as far as he had pulled over to the left, pulled back to the right."
Thelma Jean Anderson was seated in the lap of Juanita Wheeler and testified that her father did not cross the center line. However, she qualified her testimony by stating that her father did cut his car to the left, how many feet she did not say, but she knew that he did not cut it very far because he did not cross the middle of the road. She testified further:
"Q. After he cut to the left, did he again cut to the right? A. Yes, sir.
"Q. He did? A. We were straight we had stopped to a dead still."
* * * * * *
"Q. You mean, after he cut to the left and cut back to the right, it was straight then, is that what you mean? A. Yes, sir.
"Q. How far back did he cut to the right, after he cut to the left, can you tell me that? A. Well, he was going straight down and he had barely turned his wheels to turn into the driveway and all he had to do was just turn the wheel a little and he was back over on the side of the road."
Juanita Wheeler, an eighteen year old friend of the Andersons was seated on the right side of the front seat of the truck holding Thelma Jean Anderson in her lap. She testified that Anderson stayed on his side of the road at all times but she qualified that statement on cross-examination with the following testimony:
"Q. Now, after Mr. Anderson put his hand out, he cut his car to the left, did he not? A. Yes, sir.
"Q. Then, after doing that, he cut it back to the right, did he not? A. Yes, sir."
* * * * * *
"Q. Do you know why Mr. Anderson cut his car back to the right? A. Well, he seen (sic) he would not have time to make it across to his driveway. If he had, the car would have hit us from the side.
"Q. Do you think there was a need for him to turn back to the right so the other car could pass? A. Yes, sir.
"Q. You figured he had to get out of the way so they could come by? A. Yes, sir.
"Q. When Mr. Anderson began to cut his car back to the right, how far back to the right would you say he went? A. I don't know.

*381 "Q. Five or six feet? A. No sir, it wasn't that far.
"Q. Two or three? A. Maybe two."
Jack Anderson's testimony was only to the effect he observed the Tyler car on the west side of the hill some distance from the scene of the accident while he was walking along the highway and at that time the Tyler car was traveling at a speed which he estimated at from fifty-five to sixty miles per hour.
The record does not show the Tyler car was driving at an illegal and excessive rate of speed and consequently if any negligence whatsoever can be attributed to Bobbie Jean Tyler it must be predicated on her action in turning the Ford automobile to the left, in which act she invaded the north and left lane of traffic and came in contact with the Anderson car. Her motive for so doing was caused either by her belief Anderson was about to turn across her lane of traffic, or the emergency was actually created by Anderson invading the south or the left lane of traffic. If Bobbie Jean Tyler was not justified in making the left turn to avoid striking the Anderson truck, then the judgment should be affirmed. If the left turn was precipitated by an unwarranted invasion of the south lane of the highway by Anderson when he could not safely make the left turn in front of the Tyler car, then the judgment should be in favor of the plaintiffs.
In determining which of the foregoing postulations should be accepted some important revelations of the photographs are decisive. These fix the locus of impact at a point just east of the Anderson driveway and show the Anderson truck could not have been entirely in its right lane of traffic at the time of the impact. For Anderson's testimony to be correct, the Tyler automobile at the moment of impact would have had to be several feet to the north of the position indicated in the photographs. The alternative conclusion must rest on a finding that the truck was several feet south of the location fixed by Anderson. We think the proper holding would be that a portion of the truck was in the south lane of traffic when the collision occurred. As pointed out above, these photographs show neither vehicle was injured on the left front side. The Tyler car, following the collision, is pictured as parallel with the highway, its right wheels being slightly to the north side of the center of the road. The skid marks show the Tyler automobile was in the act of making a rather sharp turn to the left when the impact occurred, and was thrown directly westward or backward several feet by the impact. Manifestly, therefore, the Tyler automobile did not go nearer the north edge of the highway than shown in the pictures. The position of the Tyler car so fixed at the time of impact places the right front or damaged portion of the truck near the center of the road. If the truck was located as stated by Anderson and the collision occurred while it was so situated, the left front wheel of the other vehicle would have been entirely off of the north side of the highway.
The physical facts so established are supported, we think, entirely by the testimony of the plaintiffs' witnesses and we are also of the opinion the testimony of three of the occupants of the Anderson car indicate Anderson attempted to make a left turn into his driveway. The testimony of Captain Terry and Mr. Parrott was characterized by uncertainty and both attempt to imply meaning to statements attributed to Bobbie Jean Tyler which she denies she intended. How much importance should be attached to the removal of the truck by Anderson we cannot say, but it is of some significance he testified he removed his truck before the photographer arrived so that traffic could get by. For, if his truck was completely on the north lane of the highway as he so testified, traffic could very easily have passed in the unobstructed south lane of the road.
It is provided in the Louisiana Highway Regulatory Act, LSA-R.S. 32:235, the driver of any vehicle on the highways before turning upon the same, shall ascertain that there is no traffic approaching from either direction which will be unduly delayed and shall yield the right of way to *382 such approaching traffic and not attempt to make the turn unless the way is clear. This statutory rule has been repeatedly construed by the appellate courts in holding a motorist making a left turn must exercise a high degree of caution before attempting to do so and he should not attempt to execute such a turn where there is danger to normal overtaking or oncoming traffic. See: Home Insurance Company v. Warren, La.App., 1947, 29 So.2d 551; Bonstaff v. Hawkins, La.App., 1947, 30 So.2d 781; Michelli v. Rheem Manufacturing Company, La.App., 1948, 34 So.2d 264; Myers v. Landry, La. App., 1951, 50 So.2d 318.
It must follow that if Anderson projected his truck in front of the Tyler vehicle as indicated by the record, the operator of the Tyler vehicle was confronted with an emergency which could be solved only by driving straight ahead and striking the truck squarely in its front or side, or by turning to the left or right in order to avoid the full force of the impending collision. Bobbie Jean Tyler undertook the latter course. Can it be said that she was negligent in doing so? In such an event the resolution of the legal issue depends upon an application of the sudden emergency doctrine which comes into play when an automobile driver has only a fraction of time to act and the driver's failure to use the best judgment is not considered an act of negligence where the driver of the other automobile has created the emergency. Under this rule, and in view of our finding that Anderson did invade the lane of traffic reserved to the Tyler car immediately in front of the Ford automobile, even if it can be said that Bobbie Jean Tyler made an incorrect decision in turning to her left, such an error of judgment would not preclude her from recovery. See: Bass v. Burnley, La. App., 1939, 193 So. 200.
Defendant has specifically plead the contributory negligence of Bobbie Jean Tyler. We do not find merit in this plea inasmuch as we have failed to find that she acted negligently in any wise. We have concluded the sole and proximate cause of the accident was the negligence of Anderson in placing the Tyler car in imminent danger by driving his truck into its path, and from this it follows the plaintiffs are entitled to recover in accordance with their proof.
Alonzo Tyler is entitled to recover in accordance with the stipulation between counsel the sum of $65, representing damages to his automobile and a medical bill incurred by his daughter, Bobbie Jean. He is also entitled to recover for the use and benefit of Bobbie Jean Tyler damages in the sum of $250. The evidence is undisputed that she suffered a laceration of the right elbow, requiring eight sutures for closure, and multiple bruises and contusions, especially about her legs. She suffered pain and discomfort for at least four days.
Warren Mack Tyler should recover the sum of $370.05, the correctness of which is stipulated by counsel and represents medical and hospital expenses incurred for his daughters, Dorothy Nell and Evelyn. For the use and benefit of his minor daughter, Dorothy Nell, he should recover the further sum of $500. It is shown that Dorothy Nell suffered multiple lacerations of her legs requiring three sutures for closure, multiple abrasions, contusions, and a cerebral concussion which caused headaches. She was hospitalized for four days.
Evelyn Tyler received injuries consisting of severe lacerations to the right knee and portion of the super patella tendon, which required surgical exploration under spinal anaesthesia, and necessitated her wearing a splint on her right leg for three weeks and after that an elastic bandage. She suffered severe pain and discomfort for several weeks. She sustained some other injuries, including a laceration of the bridge of the nose, which required suture, and bruises to her eyes. We believe $1,500 is adequate for the injuries so sustained.
For the foregoing reasons the judgment from which appealed is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of Alonzo Tyler for himself individually, in the sum of $65, *383 and for the use and benefit of his minor daughter, Bobbie Jean Tyler, in the sum of $250, and against the defendant, Marquette Casualty Company, together with five per cent interest from judicial demand until paid.
It is further ordered that Warren Mack Tyler do have judgment herein in favor of himself individually in the sum of $370.05 and for the use and benefit of his minor daughter, Dorothy Nell Tyler, in the sum of $500, together with five per cent interest from judicial demand until paid, against the Marquette Casualty Company.
It is further ordered, adjudged and decreed that there be judgment in favor of Evelyn Tyler and against the defendant, Marquette Casualty Company, in the sum of $1,500, together with five per cent interest from judicial demand until paid.
It is further ordered that defendant pay all costs of this suit, including costs of appeal.