ELLIS, Judge.
Plaintiff, Walter F. Zehner, Jr. and his insurer, Pearl Assurance Co. Ltd., which holds a subrogation from the plaintiff, brought this suit against John Adam An-ders, claiming damages to plaintiff’s automobile as a result of an accident which occurred about 4 miles from Opelousas, La., and for expenses incurred as a result of the accident. The defendant admitted the accident but denied any negligence whatsoever, expressly plead contributory negligence of the plaintiff, and reconvened charging the negligence of the plaintiff to be the proximate cause of the accident, and asked damages in reconvention to his own automobile. In addition defendant plead the doctrine of the last clear chance.
Upon the trial the damages to both automobiles were stipulated and the trial court rendered judgment, finding both parties were guilty of negligence, whereupon plain *91 tiffs’ suit was dismissed as well as the defendant’s claim in reconvention and costs were assessed equally between them.
From this judgment both plaintiffs and the defendant perfected a devolutive appeal.
The accident occurred on U. S. Highway 190 between Opelousas and Baton Rouge, La., which runs east and west. The defendant, Anders, was driving a pickup truck in an easterly direction, proceeding toward Baton Rouge. At the site of the accident, on the north side of the Highway, is located a filling station and restaurant known as Nolan’s Place, and defendant decided he might need some gasoline and pulled off onto the shoulder on his right-hand side of the highway, where he came to a complete stop, looked for approaching traffic and then made a left-hand turn across the Highway to reach the filling station. The highway at this point is about 24 feet in width and when Anders had covered little more than half this distance he was struck by the plaintiff’s automobile, the right front portion of plaintiff’s car striking the front left portion of Anders’ vehicle. The plaintiff was traveling toward Baton Rouge, in an easterly direction. The collision occurred about 4:30 in the afternoon, and the weather was rainy, cloudy and overcast, and it was drizzling at the time.
The plaintiff relies upon the fact that the defendant made a left-hand turn across his lane of traffic without first making sure that the way was clear. The defendant rests his reconventional demand upon the allegations that the plaintiff was proceeding at a highly excessive rate of speed and instead of continuing on the south side of the Highway he turned into the left lane or north side thereof, striking Anders’ truck; that his speed, considering the weather and traffic conditions, was negligent, as was his failing to see what he is legally charged to have seen and to do what he could to avoid the accident by slowing down and bringing his car to a stop dr keeping in his right lane of traffic. Coiitributory negligence is also plead.
It is shown by the preponderance of the testimony that at the place where defendant had stopped his truck on the shoulder preparatory to making a left-hand crossing of the highway that it was not gravel but was clay which, because of the drizzling rain, had become very slippery. It is admitted that neither the defendant nor his wife ever saw the plaintiff approaching from the west until the collision. According to the eyewitness Hargroder, he saw the plaintiff’s car approaching when it was approximately 300 yards. This witness evidently meant 300 feet for the reason that he stated that the plaintiff -blew his horn at that distance, which, of course, would be some 900 feet which is not only unlikely but contrary to the plaintiff’s testimony and the physical facts. Be that as it may, Hargroder testified that when the defendant started his truck to make a left-hand crossing of the highway that the back wheels spun in the clay and that when the plaintiff was almost opposite the pickup truck the rear wheels hit the paved portion of the highway which shot the pickup truck forward, and that the impact probably occurred when the front of the pickup truck was approximately 3 or 3^4 feet across the center line.
The plaintiff’s testimony is corroborative of the fact that the point of impact was in the north lane 3 or 3}4 feet across the center line, for he testified that in an attempt to avoid the collision he had pulled as far to the left as he could and at the time of the actual impact his left front wheel was off the pavement on the north side of the highway.
The accident occurred before dark at approximately 4:40 P.M. and although it had been drizzling rain, visibility was apparently good and there was no excuse for the defendant or his wife, to whom he entrusted the duty of looking for traffic approaching from the west, not to have seen the plaintiff or to have heard the latter’s horn, especially in view of the fact that both testified that the windows were down on the pickup truck. The testimony shows that the plaintiff was in such close proximity to the defendant’s truck at the time the latter decid - *92 ed to cross the highway that had ■ he seen what he should have, seen he would have known that he could not safely make the left-hand crossing of the highway.
There is no doubt of the gross negligence of the defendant in making this left-hand- crossing of the highway in the face of approaching traffic. The cases are legion that such a maneuver is one of the-most-dangerous and a party contemplating such a turn must exercise the highest degree of caution. A few of these cases are: Home Insurance Company v. Warren, La.App., 29 So.2d 551; Bonstaff v. Hawkins, La.App., 30 So.2d 781; Myers v. Landry, La.App., 50 So.2d 318; Tyler v. Marquette Casualty Co., La.App., 79 So.2d 376.
The lower court found the defendant clearly guilty of negligence in making, the left-hand turn across the highway with-. out exercising the proper pare and caution as required under the law but also found the plaintiff guilty of contributory negligence; stating that he could not agree with the plaintiffs testimony as to the latter’s rate of speed, viz., 45 pr 50 miles,per hour, based, as he stated, in his written reasons, upon the.finding that according to the bills of rejpai'rs which were placed in' evidence it was apparent “that extensive damage was done to both vehicles in this collision.” As to the speed of'the plaintiffs vehicle, he testified that he had been following a big truck' and that he had stayed approximately 300 feet behind the truck due to the spray and dirt which such a vehicle throws when the pavement is wet, and that his speed was approximately 45 miles per hour and -did not exceed 50 miles per hour. It must be re-, membered that this is U. S. Highway 190, a main artery of traffic, and that it had been recently widened to 24 feet of -hard surface or pavement. A speed of 50 miles per hour where visibility is good .on a wide, payed main highway .is not' excessive even though it might have been drizzling rain. ' One traveling at such a speed is within the legal speed limit and under the, normal expected . hazards of-the .road would not .be negligent in traveling at such- a speed.
The ■ bills referred to , by the learned judge of the .District Court for the damage to the plaintiff’s automobile amounted to $472.04, whereas the damage to the pickup-truck of the defendant amounted to $309.69. Considering the hourly wage and the cost of materials, a damage of four or five hundred dollars to an automobile does not show too extensive a. demolishment. Therefore, the nature of the damages, the cost of repairs to plaintiff’s and defendant’s respective automobiles does not of itself convict plaintiff of traveling at' an excessive speed or in excess of 50 miles per hour as-he testified.
The learned judge went further in his written reasons and stated: “Even considering Mr. Zehner’s testimony as given by him, if he had been traveling at a rate of speed not in excess of 50 miles per hour and if he had applied his brakes while 200-feet away from the Anders automobile, he would have stopped in time to avoid the collision and his failure to do so would also-constitute contributory negligence in this-instance.”
The- testimony of the plaintiff was to the-effect that he had been following this big truck at a distance of approximately 300’ feet, that when he was approximately 300-feet and the large truck had passed the defendant’s pickup truck which was parked on the south side of the highway, he saw the truck, blew his hom as a warning, and when at approximately 200 feet, having become aware of the fact that the defendant intended to cross the highway, he applied his brakes and pulled to the left o-f the highway and continued blowing his horn.
Based upon these facts and in answer to-the' conclusion of the lower court that the plaintiff should have been able to stop within 200 feet even if he was going at 50 miles, per'hour,- counsel for the plaintiff in' his brief states:
“Assuming further that petitioner was travelling at a speed of 50 -miles per hour and making reference to the date table appearing in Volume 14 of *93 the Tulane Law Review on Page 503 as a rough guide to determine the approximate distance required to stop under average and poor conditions, it would require 193.7 feet to stop under average conditions and 471.7 feet to stop under poor conditions. The article makes reference to poor conditions ' as that of ice or snow. Neither were present here, but the highway was wet and slippery when the brakes were applied. It would be safe to assume that the distance required to stop petitioner’s vehicle would be somewhere near the mid-point between 193.7 feet and 471.7 feet or about 322.7 feet. In view of the testimony'given by petitioner wherein he stated he was approximately 200 feet away from defendant’s pick up truck when it began to reenter' the highway, it would have been impossible for him to stop * *
While the plaintiff may have been closer than 200 feet or he could have been somewhat farther, we must accept his testimony that his estimate was approximately correct, and while it is well settled that the speed tables as referred to are approximations based on averages and cannot be accepted as an absolute guide, yet in applying them to definite facts they are of great value. The 50 miles per hour which plaintiff was traveling was not excessive on one of the main highways even though it might have been drizzling or raining where the visibility was good, and even though at such a speed and under such conditions ■ a motor vehicle cannot be stopped within two or three hundred feet. The defendant should not have attempted to cross this highway in the face of approaching traffic which was within the distance plaintiff was bound to have been at the time defendant attempted such a left-hand crossing. The very fact that the defendant was only able to travel some 15 feet before being struck by plaintiff’s vehicle which was approaching at approximately 50 miles per hour is almost conclusive proof of the short distance that plaintiff’s vehicle was at the time defendant began his left-hand crossing of the highway, and, in fact, 'corroborates the testimony of the plaintiff. A similar conclusion was reached by the Court of Appeal, Second Circuit, in Dudley v. Surles, La.App., 11 So.2d 70-72:
“The fact that the front end of the truck had reached a distance of only •314 feet east of the center line, this being shown by the testimony of a disinterested witness, argues strongly in ■favor of the closeness of -the colliding, vehicles when the. turn began and tends ■to corroborate the testimony of Miss ■Huff- in that respect.”. •
We are therefore of the opinion that the proximate cause of the collision in this case was the grossly negligent attempted left-hand crossing of U. S. Highway 190 by the defendant in the face of the closely approaching plaintiff’s automobile, and that the plaintiff was not contributorily negligent as the defendant by his maneuver created an emergency from which the plaintiff apparently did everything in his power to extricate himself but to no avail. For the above reasons the judgment' of the District'Court is reversed; and judgment herein is herewith rendered in favor of plaintiff insurer- in the amount of $222.04 and in favor of plaintiff Zehner in the full sum; of $355.10 and against defendant Anders, together with legal interest from date of. judicial demand until paid; defendant is taxed with all costs of these proceedings.
Reversed and rendered.. ..