FRUGÉ, Judge (ad hoc).
This is an action ex delicto wherein' plaintiffs-appellants sued Colon McKenzie- *183 and his liability insurer, Fidelity & Casualty Company of New York, for the recovery of damages resulting from an automobile collision in St. Tammany Parish, Louisiana, on July 3, 1957 at about 11:10 a. m. Plaintiff, Thomas A. Kirby, seeks to recover the sum of $616.77 for damages to his automobile and wrecker services and the sum of $20 for medical expenses for his wife. Plaintiff, Mrs. Mildred Kemp Kirby, seeks to recover the sum of $1,500 for personal injuries sustained at the time of said collision.
In support of their demands for the recovery of damages as above set forth, plaintiffs-appellants herein have alleged certain purported acts of negligence on the part of defendant-appellee, Colon McKenzie, as the owner and operator of a certain 1956 Pontiac automobile, at the time of said collision, and plaintiffs-appellants further alleged that said purported acts of negligence constituted the sole and proximate cause of this collision.
The defendants answer denied negligence on the part of their assured, McKenzie, and in the alternative, pleaded contributory negligence on the part of the plaintiffs-appellants, after alleging that the sole and proximate cause of the accident was caused by the plaintiff, Thomas A. Kirby, by failing to keep a proper lookout for approaching traffic and by creating a sudden emergency by his careless and heedless act in turning across a highway in the face of on-coming traffic, and in failing to yield the right-of-way to the approaching McKenzie vehicle, and thus avoiding the accident by the simple expedient of refraining from attempting said turn until the McKenzie vehicle had safely passed.
After trial on the merits, the trial Judge rejected plaintiffs’ suit without assigning any written reasons therefor, and from this judgment, plaintiffs appeal.
The facts disclose that the accident occurred while the Kirby vehicle was in the act of attempting a left turn across the .highway into a large parking lot or area known as the “Swing Club”. The point of impact was the front of the McKenzie automobile and the right side of the Kirby automobile. The point of impact with respect to the highway is disputed, as is the speed of the McKenzie automobile.
Seven (7) witnesses who were present at the scene of the accident testified at the trial. Two (2) of these witnesses, Mrs. McKenzie and Mrs. Kirby, know nothing of the speed of the McKenzie vehicle, since Mrs. McKenzie was asleep and Mrs. Kirby never saw the McKenzie vehicle at any time before the impact. Defendant, McKenzie testified that the speed of his vehicle was fifty-five (55) miles per hour, and plaintiff, Thomas Kirby, testified that the McKenzie automobile speed was normal, between forty (40) to sixty (60) miles per hour. Plaintiff under cross-examination stated that the McKenzie car was two hundred and fifty (250) feet to three hundred (300) feet away before he began his left turn. Two (2) witnesses for the defendant, Bobbie Joe Graham and Lois Tynes, could not give any indications of the speed of the McKenzie automobile. Their testimony is devoid of anything to cause this Court to believe that the McKenzie automobile was traveling at an excessive rate of speed. It is to be observed that both Graham and Mrs. Tynes were disinterested witnesses, and unquestionably, the trial court took cognizance of that fact and gave great weight to their testimony. The State Trooper, Officer Passman, was not present at the time of the accident, having arrived at the scene about one and a half (lj/á) hour later. Both Graham and Mrs. Tynes were in a position to see the accident, and both actually viewed the impact. Both testified that the impact occurred on a paved portion of the highway in the northbound lane thereof. Both testified that it would have been impossible for the accident to have occurred off the highway, since in that event, the McKenzie vehicle would have most certainly been headed directly at them as they stood near by vendor's truck. Their testimony revealed that the collision occur *184 red almost immediately after plaintiff Kirby began his left turn across the highway. It is evident that the trial court had no doubt that in their estimation, the turn was made at such a time as to' make the ensuing collision inevitable, and after we have carefully read and studied their testimony, we have reached the same conclusion. The only other witness who testified as to the physical facts of the accident who is not an interested party was Trooper Passman. Plaintiffs rely heavily on the testimony of this officer, with respect to their allegation that the collision took place off the traveled portion of the road. They rely on the Trooper’s testimony as to the small “scooped out portion” approximately eight (8) feet from the pavement.
Plaintiffs in this Court as well as in the District Court tried to pay great stress on the fact that this was the point of impact. Of course we realize that the Trooper’s testimony with respect to the point of impact would have to be taken with that of the witnesses who actually saw the accident. It is our ditty to assess all of the evidence, including the testimony of the eye-witnesses before we reach a conclusion.
It seems reasonable that in view of the fact that the Kirby vehicle at the time of the collision was moving, that the force of the collision would make it almost impossible for this vehicle to remain in the same spot at the point of impact after the collision took place on the paved portion of the highway or the edge thereof. It is evident that the Kirby vehicle traveled some amount of distance after the impact and swung around, causing this “scooped out portion” referred to by the Trooper. The Trooper stated that he paced thirty-two (32) steps of black marks on the pavement, allegedly pointing to the total skidding distance of the McKenzie vehicle on the application of the brakes to the point of impact.
This testimony on the part of the Trooper is somewhat confusing for the obvious reason that Mr. McKenzie already has testified that when he applied his brakes he must have cut slightly to the right so that at the time of the impact his right wheels were off the pavement, but the left wheels were still on the pavement. The evidence disclosed no lack of vigilance on the part of McKenzie who applied his brakes as soon as he could, even as he saw that the Kirby car was turning directly in his path. The evidence disclosed no reason for McKenzie to expect Kirby to make this turn. Plaintiff admittedly made no hand signal, but testified that he had set his directional turning signal on, but there was no intersecting road to put McKenzie on notice that such a turn might be made, and there was nothing whatsoever exhibited to McKenzie to indicate to him that this driver would cut directly in front of him into this adjacent parking lot.
The State Trooper made no mention in his testimony of plaintiff Kirby’s vehicle having signalled by directional lights, nor was the witness Graham able to see any operating directional lights at the time Kirby turned and subsequent to the accident; nor is there any testimony by any other of the witnesses to indicate that such signal was made other than the interested plaintiffs, themselves.
Our appreciation of the evidence indicates that the sudden left turn by the plaintiff into the path of defendants’ approaching vehicle created a sudden emergency, and the defendant who was not negligent in the operation of his vehicle, prior to the creation of the sudden emergency, did the natural and proper thing by applying his brakes as hard as possible. The record shows that defendant McKenzie, as soon as he saw plaintiff Kirby begin his turn, s-lammed on his brakes and kept almost in a straight line to the point of impact. There was nothing else he could do under the circumstances, and certainly was unable to do anything else in the space allotted to him because the vehicles were so close as to make an accident inevitable by the gross negligence of Kirby in attempting *185 his turn, rather than simply waiting for the McKenzie vehicle to pass before doing so.
Plaintiff relies upon his allegation that defendant McKenzie was traveling at an excessive rate of speed. The evidence does not bear out that contention. Plaintiff relies on Blashfields’ Encyclopedia of Automobile Law chart to sustain his view that defendant McKenzie was traveling at an excessive rate of speed. Reference to this chart shows that fifty (SO) miles per hour, the actual braking time for a vehicle with excellent brakes is one hundred and eleven (111) feet, and at sixty (60) miles per hour, the speed limit at the site, said actual braking distance would be one hundred and sixty (160) feet. Officer Passman found skid marks of ninety-six (96) feet up to the point of impact, and it is impossible to state from said evidence that the speed of the McKenzie vehicle was in excess of fifty-five (55) miles per hour. It appears to us, as it must have convinced the trial Judge, that these measurements substantiate McKenzie’s testimony, that he did everything possible to avoid the accident, and that he immediately applied his brakes as hard as possible at the instant he saw the Kirby vehicle swerve into his path.
After this review of the testimony, we find the point of impact to be on the highway and not off the highway as contended for by the plaintiff, and we find the speed of the McKenzie automobile not excessive, or over sixty (60) miles per hour.
We therefore conclude that the plaintiff, by swerving in the path of the defendant McKenzie automobile, was grossly negligent, and that said negligence was the proximate cause of the accident.
We further find that the defendant McKenzie is guilty of no negligence whatsoever. Consequently, there is no manifest error on the part of the trial Judge in dismissing this suit.
LSA-R.S. 32:235 provides that a driver, before turning upon any highway, shall ascertain that there is no traffic, vehi-cle or pedestrian, approaching from either direction which will be unduly delayed, and that said driver shall yield the right of way to such approaching traffic, and shall not attempt to make a turn unless the way is clear. Needless to say, on numerous occasions the appellate courts of this State have been called upon to interpret this statutory provision and the jurisprudence is replete with decisions to the effect that when a left turn is being made and an accident occurs, the burden rests heavily on the driver making the turn to explain how the accident occurred and to show that he was free from negligence.
Our Supreme Court, in reversing the Second Circuit Court of Appeal, 88 So.2d 402, in the case of Washington Fire & Marine Insurance Co. v. Firemen’s Insurance Company, 232 La. 379, 94 So.2d 295, 296, stated:
“In so holding we think the court (The Court of Appeal) erred. The cases are legion which hold that before making a left turn the driver of an automobile must ascertain that he may do so safely; not only is this cardinal rule of the road founded on common sense, but in our State is a positive enactment, incorporated in the Revised Statutes as R.S. 32:235, by the terms of which it is the mandatory duty of the driver of any vehicle on the highways of this State to ascertain before turning upon any highway, that there is no traffic, vehicular or pedestrian, approaching from either direction which will be unduly delayed; and said driver ‘shall yield right-of-way to such approaching traffic and shall not attempt to make a turn unless the way is clear.’ ” (Emphasis ours.) Among pertinent cases are Lane v. Bourgeois, La.App., 28 So.2d 91; Home Insurance Co. v. Warren, La.App., 29 So.2d 551; Michelli v. Rheem Mfg. Co., La.App., 34 So.2d 264; Malone v. Fletcher, La.App., 44 So.2d 352; Zurich Fire Ins. Co. of New York v. Thomas, La.App., 49 So.2d 460, and Codifer v. Oc *186 chipinti, La.App., 57 So.2d 697. In the last cited case the Court of Appeal for the Parish of Orleans aptly stated that “When such a left-hand turn is being made and an accident occurs, the burden rests heavily on the driver who is making the left-hand turn to explain how the accident occurred and to show that he was free from negligence." 57 So.2d at page 699. (Italics by Court.)
It is our opinion that plaintiffs have failed to take this case out of the left-hand turn situation, and that the record is replete with evidence, sufficient to justify the finding of the lower Court that the sole and proximate cause of the accident was the negligence of plaintiff Kirby in executing a sudden turning maneuver in the path of the defendant McKenzie vehicle, at such a time as to make a collision inevitable; and on the other hand, defendants have proved by sufficient testimony that the accident occurred on the highway, and that plaintiff Kirby’s turn was made at such a time that there was nothing defendant McKenzie could do to avoid the accident.
Plaintiff’s position that the accident occurred off the highway is not supported by the testimony, but even assuming arguendo that the impact occurred a few feet off the paved portion of the road, defendants maintain that such fact would be of no import to a proper decision of this Court in affirming the judgment of the trial court.
In the case of Tyler v. Marquette Casualty Company, La.App., 79 So.2d 376, the defendant, Anderson, executed a left-hand turn across the road into his driveway as the plaintiff Tyler approached from the opposite direction. The Court quoted LSA-R.S. 32:235 which is to the effect that the driver of any vehicle on the highways before turning on the highway shall ascertain that there is no traffic approaching from either direction which will be unduly delayed and shall yield the right of way to such approaching traffic and not attempt to make the turn unless the way is clear. We note the following language in this decision : at page 382(2, 3):
“It must follow that if Anderson projected his truck in front of the Tyler vehicle as indicated by the record, the operator of the Tyler vehicle was confronted with an emergency which could be solved only by driving straight ahead and striking the truck squarely in its front or side, or by turning to the left or right in order to avoid the full force of the impending collision. Bobbie Jean Tyler undertook the latter course. Can it be said that she was negligent in doing so? In such an event the resolution of the legal issue depends upon an application of the sudden emergency doctrine which comes into play when an automobile driver has only a fraction of time to act and the driver’s failure to use the best judgment is not considered an act of negligence where the driver of the other automobile has created the emergency. Under this rule and in view of our finding that Anderson did invade the lane of traffic reserved to the Tyler car immediately in front of the Ford automobile, even if it can be said that Bobbie Jean Tyler made an incorrect decision in turning to her left, such an error of judgment would not preclude her from recovery. See: Bass v. Burnley, La.App. 1939, 193 So. 200.”
In the instant case, there was no reason for defendant McKenzie to know that plaintiff Kirby intended to make a turning movement directly in his path. It is admitted that no arm signal was given and the testimony preponderates against Kirby’s contention that any directional light signal was given, but even if such signal was given, McKenzie would certainly be justified in thinking that Kirby would have awaited McKenzie passing him before attempting to turn directly into his path.
In Strug v. Travelers Indem. Co., 53 So.2d 437, 442, a very similar factual situation was presented to the First Circuit *187 Court of Appeal. In this case also, the plaintiff was the driver’s wife riding in his car as a passenger when he made a left hand turn across the highway at a time when the defendant was approaching from the opposite direction. The trial Judge found that the defendant was approaching at approximately 50 miles per hour and that he was approximately 125 to 150 feet away when plaintiff’s vehicle began its turn. The trial Court found no negligence on the part of the defendant and the First Circuit affirmed the judgment, finding that the left turn was the proximate cause of the collision and stating that while the defendant “possibly Charles could have gone around the Strug car to his left had he anticipated the full maneuver performed by Strug,” nevertheless “even if it should be found that Charles (the defendant) made an error of judgment when faced by the emergency created by the negligence of Strug, he still should not be penalized.”
In the instant case, defendants produced the testimony of two impartial eye witnesses to show that turn was improperly made at such a time as to make a collision inevitable. The plaintiffs introduced nothing whatsoever by the way of proof from any standpoint to bear the special burden placed on them by the Courts of this State to convince this Court that the turn was properly made.
This Court recently had occasion in the case of Bourgeois v. The Fidelity & Casualty Co., 102 So.2d 532, at page 535, to apply the sudden emergency doctrine in which the Court stated:
“ * * * in the case at bar, we conclude the true hazard was not created until Pontiff was only some 250 feet from the Bourgeois vehicle and at a time which was too late to avoid an accident. A sudden emergency was created to which he did not contribute.”
The record is barren of evidence to the effect that McKenzie was exceeding the speed limit or that he failed to keep a proper lookout or that he did or failed to do any legal action required of him. The emergency was solely and alone created by the grossly negligent maneuver of plaintiff Kirby, and under the well settled “sudden emergency doctrine”, McKenzie was required only to act as any reasonable man would in similar circumstances in attempting to avoid the accident. His decision to cut to the right and apply his brakes was a most normal and reasonable one, and certainly in keeping with the expected act of any driver in such a situation. Regardless of whether or not his decision in this respect was correct, no negligence can be ascribed to him, since the emergency was not of his creation, nor did he contribute to it in any way. See case of Fornea v. Crain, La.App., 79 So.2d 95.
Plaintiffs rely strongly on White v. American Employers Insurance Company, La.App., 197 So. 803. That opinion states that while a motorist, in making a left hand turn on a highway in the face of oncoming traffic is required to exercise great caution and see that such turn can be made in safety, such a rule does not prevent the motorist from making a left hand turn if the oncoming traffic is of a sufficient distance to permit the execution thereof prior to the reaching of the oncoming traffic at the turning point. This is good law and we have no quarrel with it. The facts in the case at bar, however, are not similar to the facts in the White case, and therefore, this authority is inapposite.
There is no manifest error in the judgment of the lower Court, and the same will not be disturbed.
For these and the foregoing reasons, the judgment of the District Court is affirmed.
Affirmed.